Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/29/2019 09:07 AM CDT

State of Nebraska, appellee, v.
Eleazar Z. Garcia, also known
as Eleazar Garcia-Zuniga,
appellant.

___ N.W.2d ___

Filed October 22, 2019.    No. A-18-661.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

2. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

3. \_\_\_\_: \_\_\_\_. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

4. **Trial: Waiver: Appeal and Error.** Failure to make a timely objection waives the right to assert prejudicial error on appeal.

5. **Sentences: Waiver: Appeal and Error.** Generally, where no objection is made at a sentencing hearing when a defendant is provided an opportunity to do so, any claimed error is waived and is not preserved for appellate review.

6. **Appeal and Error.** An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

7. **Rules of the Supreme Court: Interpreters.** Pursuant to Neb. Rev. Stat. § 25-2405 (Reissue 2016), a court interpreter is not required to recite an

oath at the beginning of each proceeding if already certified under the rules of the Nebraska Supreme Court.

8. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

9. ____. An appellate court does not consider errors which are argued but not assigned.

10. **Effectiveness of Counsel.** As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.

11. **Sentences: Time.** A sentence validly imposed takes effect from the time it is pronounced.

12. **Sentences.** When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed.

13. **Judgments: Records.** When there is a conflict between the record of a judgment and the verbatim record of the proceedings in open court, the latter prevails.

14. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

15. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

16. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

17. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record in order to preserve such claim. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims.

18. **Effectiveness of Counsel: Records: Proof: Appeal and Error.** An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's

performance was not deficient or that the appellant could not establish prejudice.

19. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant has the burden to show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

20. **Effectiveness of Counsel: Pleas.** In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

21. **Convictions: Effectiveness of Counsel: Pleas: Proof.** When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty.

22. **Pleas.** To support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.

23. **Effectiveness of Counsel: Proof: Appeal and Error.** General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review.

Appeal from the District Court for Sarpy County: George A. Thompson, Judge. Affirmed as modified, and cause remanded with directions.

Thomas P. Strigenz, Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Bishop, Judge.

## INTRODUCTION

Eleazar Z. Garcia, also known as Eleazar Garcia-Zuniga, entered guilty pleas to charges of second degree assault and use of a weapon to commit a felony. The Sarpy County District Court orally sentenced Garcia to 15 to 20 years' imprisonment for his conviction of second degree assault and 5 to 10 years' imprisonment for his conviction of use of a weapon to commit a felony. The latter sentence was to run consecutive to his sentence for second degree assault. Garcia claims his pleas were not intelligently and understandingly made because the district court failed to ensure statutes pertaining to interpreters were followed. He also claims that the district court abused its discretion in imposing excessive sentences and that his trial counsel was ineffective. We affirm Garcia's convictions and sentences. However, because the district court's oral pronouncement of the sentences does not match its written order, we remand the matter with directions to modify the written sentencing order to reflect the district court's oral pronouncement.

## BACKGROUND

In September 2017, the State filed a criminal complaint in the county court for Sarpy County, charging Garcia with one count each of attempted first degree murder, first degree sexual assault, and first degree assault. In October, the State filed an amended criminal complaint, charging Garcia with one count each of attempted second degree murder, use of a weapon to commit a felony, and terroristic threats. A journal entry and order of the county court from October shows that Garcia "require[d] an Interpreter for Spanish" and a "Court Certified" interpreter appeared at a hearing, that Garcia waived his right to a preliminary hearing on the counts as amended, and that he was bound over to the district court on those counts.

In November 2017, the State charged Garcia by information in the district court with the same counts brought under the prior amended criminal complaint. After a continuance of

trial at Garcia's request, trial was set for June 2018. A plea hearing took place on March 19, at which a self-identified "certified court interpreter" entered her appearance. Garcia answered affirmatively when the district court asked him if he could understand what the court was saying to him with the aid of the court interpreter. The district court granted the State's request for leave to file an amended information, pursuant to a plea agreement, to charge Garcia with second degree assault (count 1) and use of a weapon to commit a felony (count 2); the State filed the amended information. Garcia waived the 24-hour notice and reading of the amended information and entered pleas of guilty to both counts. The State provided the following factual basis:

On September 2nd, 2017[,] officers responded to Bergan Mercy Hospital emergency room in reference to a woman who had a cut on her neck saying her boyfriend had caused that.

Officers made contact with . . . Garcia [sic]. Stated that the . . . boyfriend, . . . Garcia had been arguing the evening before. She stated she proceeded to [an address on] Harvest Hills Drive in Sarpy County, Nebraska. At that time she made contact with [Garcia's] niece . . . who was also present. [The victim] also made contact with [Garcia's sister]. They were in the living room talking about the relationship. [The victim] said she was sitting on the edge of the couch near at [sic] the kitchen. [Garcia's sister] was standing at the top of the stairs. And [Garcia's niece] was standing by the entrance to the kitchen. [Garcia] was outside talking to an unidentified Hispanic male. She said [Garcia] then came in and over-heard [the victim] talking about taking the car and some money and leaving [Garcia]. At that time [Garcia] got angry and started yelling at her. Then, according to [the victim], as well as [Garcia's niece], [Garcia] got quiet and calmly walked into the kitchen, walked back out of the kitchen. He went up to [the victim], grabbed her by

the hair, pulled her head to the side and started attempting to cut her neck with the knife. According to [the victim], he stated you're going to stay here, I'm going to kill you. Those three parties then with the assistance of the unidentified male at some point were able to remove [Garcia] from [the victim] and take the knife from him. [Garcia] then left the scene.

Defense counsel had nothing to add to the State's factual basis. The State then noted that "when [Garcia] went into the kitchen [the victim] and [Garcia's niece] stated initially they didn't see a knife. But after he started to cut her, they noticed that he did have a knife, knife in his hand." Defense counsel had no objection to that further factual basis. The district court found beyond a reasonable doubt that Garcia understood the nature of the charges and the possible sentences; that Garcia's pleas were accurate and made freely, knowingly, intelligently, and voluntarily; and that there was a factual basis for Garcia's pleas. The district court accepted Garcia's pleas and found him guilty of both counts.

Garcia's sentencing hearing took place in June 2018, at which a self-identified "State Certified Spanish interpreter" appeared. This was a different individual than the interpreter who had been present for the plea hearing. At the close of the sentencing hearing, the district court sentenced Garcia to 15 to 20 years' imprisonment on his conviction of second degree assault and 5 to 10 years' imprisonment on his conviction of use of a weapon to commit a felony (to run consecutive to his sentence for second degree assault). Garcia was given 245 days' credit for time served.

Garcia appeals.

## ASSIGNMENTS OF ERROR

Garcia claims, restated and reordered, that (1) his pleas were not intelligently and understandingly made because the district court failed to ensure statutes pertaining to interpreters were followed, (2) the district court abused its discretion

by imposing excessive sentences, and (3) his trial counsel was ineffective.

## STANDARD OF REVIEW

[1] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

[2,3] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## ANALYSIS

### Qualifications of Interpreters

[4,5] Garcia assigns as error that the district court erred by failing to ensure interpreter statutes were followed. We note that a similar argument was recently made by an appellant in another case before this court. See *State v. Lastor*, No. A-19-221, 2019 WL 3729723 (Neb. App. Aug. 1, 2019) (not selected for posting to court website). Here, Garcia argues that the district court "needed to make sure the Interpreter was certified under the rules of the Supreme Court **and** has taken the prescribed oath of office." Brief for appellant at 14. He assigns as error that his plea was not "intelligently and understandingly made." He argues generally about the content and purpose of the interpreter statutes and then suggests that this court should "review the record for plain error on this issue." *Id*. at 15. Garcia presumably requests a plain error review because he did not object to any matter concerning either interpreter during the plea or sentencing hearings,

even though there were opportunities to do so at both hearings (e.g., after each interpreter stated her appearance on the record). Additionally, when asked by the district court during the sentencing hearing whether there was any reason sentencing could not proceed, Garcia's trial counsel responded, "No." Having made no pertinent and timely objections during those hearings, his claim on appeal with respect to each interpreter is waived and is not preserved for appellate review. See, *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018) (failure to make timely objection waives right to assert prejudicial error on appeal); *State v. Pereira*, 284 Neb. 982, 824 N.W.2d 706 (2013) (generally, where no objection is made at sentencing hearing when defendant is provided opportunity to do so, any claimed error is waived and is not preserved for appellate review).

[6] Further, we do not find the issue qualifies as plain error. See *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019) (appellate court may find plain error on appeal when error unasserted or uncomplained of at trial, but plainly evident from record, prejudicially affects litigant's substantial right and, if uncorrected, would result in damage to integrity, reputation, and fairness of judicial process). We see no substantial right of Garcia's prejudicially affected by the district court's acceptance, without further inquiry, of the interpreters' representations that they were certified interpreters. Nebraska law requires the appointment of an interpreter in a court proceeding when the defendant is unable to communicate the English language. See Neb. Rev. Stat. §§ 25-2401 to 25-2407 (Reissue 2016). "[S]ections 25-2401 to 25-2407 provide a procedure for the appointment of such interpreters to avoid injustice and to assist such persons in their own defense." § 25-2401. Section 25-2405 states that every interpreter,

> except those certified under the rules of the Supreme Court and who have taken the prescribed oath of office . . . shall take an oath that he or she will, to the best of his or her skill and judgment, make a true interpretation

to such person unable to communicate the English lan-
guage . . . .

Interpreters certified under the rules of the Nebraska Supreme
Court are subject to an ethical code and must take an inter-
preter oath. See, Neb. Ct. R. § 6-703 (rev. 2014) (interpreters
serving pursuant to court rules "shall have read the Code of
Professional Responsibility for Interpreters" and shall have
taken "the Interpreter Oath"); Neb. Ct. R. § 6-705 (rev. 2018)
(certified court interpreter requirements). Also, a statewide
register of interpreters is maintained and published which lists
interpreters by their level of certification. See Neb. Ct. R.
§ 6-702 (rev. 2018) (interpreter register).

[7] Garcia acknowledges in the "Statement of Facts" sec-
tion of his brief that a Spanish-speaking interpreter assisted
him during his plea hearing and that the interpreter entered
an appearance as a "'certified Court interpreter.'" Brief for
appellant at 8. Garcia again acknowledges that an interpreter
was provided at his sentencing hearing and that the interpreter
entered an appearance as a "'State certified Spanish inter-
preter.'" *Id*. at 9. However, he argues that "since no oath was
given" to the interpreter, the district court needed to make sure
the interpreter was certified under the rules of the Nebraska
Supreme Court and had taken the prescribed oath of office. *Id*.
at 14. Garcia cites to no authority to support that a trial court
must engage in some type of courtroom confirmation when an
interpreter represents to the court that he or she is a certified
court interpreter. We conclude that pursuant to § 25-2405, a
court interpreter is not required to recite an oath at the begin-
ning of each proceeding if already certified under the rules of
the Nebraska Supreme Court. Further, a trial court can accept,
without further inquiry, an interpreter's representation that he
or she is a certified court interpreter. We find no plain error by
the district court's acceptance, without further inquiry, of the
representations made by the interpreters in this case that they
were certified interpreters and, thus, were not required to be
administered an oath prior to the proceedings.

[8-10] Under this same argument section of his brief, Garcia also states he "would reassert his arguments made in the above error at law in support of his claim that he received ineffective assistance of counsel such that his trial counsel did not make sure he freely, intelligently, voluntarily, and understandingly enter[ed] a guilty plea." Brief for appellant at 14-15. However, to the extent Garcia's assertion here is that trial counsel was deficient for failing to make objections related to the certification of the court interpreters, Garcia did not assign this as an error in the "Assignments of Error" section of his brief where he set forth his claims of ineffective assistance of trial counsel. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). An appellate court does not consider errors which are argued but not assigned. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018). Regardless, we have already concluded there was no plain error by the district court's acceptance, without further inquiry, of the interpreters' representations that they were certified (and therefore not required to take an oath at the proceedings). As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

## Excessive Sentences

Although not raised by the parties, before reaching Garcia's claim that the district court abused its discretion in imposing excessive sentences upon him, we note that the written sentencing order differs from the district court's oral sentencing pronouncement. The district court orally sentenced Garcia on "Count I," second degree assault, to 15 to 20 years' imprisonment, and on "[C]ount II," use of a weapon to commit a felony, to "a period of not less than 5 years, nor more than 10 years." The written sentencing order shows sentence

terms on two counts (one sentence of imprisonment of 15 to 20 years and another of 5 to 10 years), but each are written as sentences associated with "Count 1," and, thus, each purport to refer to Garcia's conviction for second degree assault. But it is evident that the discrepancy was an unintended error, as "Count 2" is accurately referenced elsewhere in the sentencing order.

[11-13] A sentence validly imposed takes effect from the time it is pronounced. *State v. Lessley*, 301 Neb. 734, 919 N.W.2d 884 (2018). When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. *Id.* When there is a conflict between the record of a judgment and the verbatim record of the proceedings in open court, the latter prevails. *State v. Lantz*, 21 Neb. App. 679, 842 N.W.2d 216 (2014). During the sentencing hearing, the district court orally ordered that Garcia's sentence on "Count I," second degree assault, was 15 to 20 years' imprisonment, and his sentence on "[C]ount II," use of a weapon to commit a felony, was 5 to 10 years' imprisonment. Pursuant to law, the district court's oral pronouncement controls.

Garcia was convicted of second degree assault, a Class IIA felony, under Neb. Rev. Stat. § 28-309 (Reissue 2016), and use of a weapon (other than a firearm) to commit a felony, a Class II felony, under Neb. Rev. Stat. § 28-1205(1) (Reissue 2016). A Class IIA felony is punishable by up to 20 years' imprisonment. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2018). A Class II felony is punishable by 1 to 50 years' imprisonment. *Id.* Garcia was sentenced to 15 to 20 years' imprisonment for second degree assault and 5 to 10 years' imprisonment for use of a weapon to commit a felony. His sentence for use of a weapon to commit a felony was ordered to run consecutive to his sentence for second degree assault, and he was given 245 days' credit for time served. His sentences are within the statutory range.

[14-16] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

A presentence investigation report (PSR) shows Garcia was 39 years old at the time of sentencing. He attended high school in Mexico, but did not graduate. At the time of the PSR, Garcia was unemployed due to his incarceration, but he reported having been previously employed by a trucking company. The PSR shows several charges on Garcia's criminal record that took place in either Illinois or Iowa and for which the disposition is unknown, including "DWI/Causing Injury" (two charges in different years), "Battery/Bodily Harm," "DWI," and "Criminal Damage/Fire/Expl. $300-$10,000." He was extradited at some point after being charged with "Inadmissible Alien" in Illinois in 2008. His convictions include the following: disorderly conduct (2012, fine); attempted possession of controlled substance and domestic assault, intentionally causing bodily injury to intimate partner (2013, 148 days' jail for each); and "DUS" and failure to appear (2013, fine for each). In October 2017, after committing his present offenses, Garcia was extradited on a "Fugitive From Justice" offense out of Iowa.

The PSR shows the probation officer's conclusion that Garcia's criminal history appears to be directly or indirectly related to alcohol abuse. When asked about his behavior with alcohol, Garcia indicated "he goes through a 'personality change' and admits that he is quite aggressive." When asked about what he is like sober, Garcia indicated "he does not say much, however does become angry from time to time and that is when he begins drinking." The PSR states Garcia "readily admits" he has a problem with alcohol. A "Simple Screening Instrument" shows Garcia was a "moderate to high degree of risk for alcohol or drug abuse." An "<u>Adult Probation Substance Abuse Questionnaire</u>" shows Garcia's truthfulness was in the low risk range and that he scored in the "problem-max percentile" for the categories of alcohol, drugs, violence, antisocial, aggressiveness, and stress coping.

The PSR indicates that during his interview, Garcia admitted he had a "'problem'" and that he "was so angry that he 'tried to kill her.'" Garcia said he thought he should be in jail due to his present aggressive behavior. Due to the nature of the offenses, a "Domestic Violence Offender Matrix" was administered to Garcia to assess the appropriateness of specialized community supervision. Garcia scored in the high risk range of the matrix. The probation officer wrote that Garcia had never been diagnosed with antisocial personality disorder but that he "displays some associated traits and behaviors." The probation officer's opinion was that Garcia's mental status was questionable because during the interview "he expresse[d] a significant amount of guilt and shame for his behavior . . . and felt that jail at this point was the safest place for him."

A "Level of Service/Case Management Inventory" shows Garcia scored in the high risk range to reoffend. He scored as a low risk in the domains of criminal history, education/employment, family/marital, procriminal attitude/orientation, and antisocial pattern; high risk in the leisure/recreation and alcohol/drug problem domains; and very high risk in the "companions" domain. The probation officer made no

recommendations in regard to sentencing but offered specific recommendations in the event the district court wished to place Garcia on a term of probation.

During the sentencing hearing, defense counsel noted Garcia was an undocumented worker so there was a "great likelihood" that after the case he would be federally indicted for illegal reentry and "would be looking at an additional 60 months," or would "likely" be deported. Defense counsel highlighted that Garcia acknowledged he had "a real problem with alcohol" and pointed out his low risk scores on the "Level of Service/Case Management Inventory." Defense counsel found it unusual in "a case like this" to see Garcia had "demonstrated a lot of guilt and shame as noted by the probation officer." Defense counsel requested a "total sentence of 15 to 20," adding "this clearly is not a probation case. He is going to be deported afterwards, and we think that total sentence would be appropriate given where he is in his acceptance and his feelings about this situation." According to defense counsel, imprisonment was appropriate for Garcia to serve his "debt to society and address those mental health issues before he gets deported."

In a letter from Garcia to the district court judge, Garcia said he took "full ownership" of his actions and knew what he did was wrong. He stated in the letter that anytime he had had "trouble it has been due to alcohol" and that he was "going to get the help in prison that [he] need[s]." Garcia spoke during the sentencing hearing, stating he was "very sorry about all of this, for the damage that [he] caused to many people that love [him]." He hoped "the best" for the victim, that she could "redo her life," and stated the victim was "always in [his] prayers." He asked for mercy and reiterated he was "really sorry."

The State pointed out that present at the time of Garcia's offenses were three 2-year-old children (including Garcia's daughter), a 10-year-old child, and a 13-year-old child, as well as the victim and Garcia's "mother" (it was actually his sister) and niece. The State reported that the victim and Garcia's niece "both said they were terrified of the situation of what

happened." The State noted Garcia's substance abuse questionnaire scores, his score in the high risk range of the domestic violence matrix, and his prior domestic violence assault conviction. The State requested a "straight sentence."

The district court said it had a chance to review the PSR and "noted some of the comments" it had heard during the sentencing hearing. The district court found the facts of the case "disturbing to say the least." The court agreed with Garcia's trial counsel that alcohol was a factor. However, the court found it had to "counter" that with the "high scores[,] prior criminal history, and the nature and circumstances of the offense[s]." In reviewing those factors, it said it found imprisonment necessary for the protection of the public because the risk is substantial that Garcia will engage in additional criminal conduct if placed on probation.

On appeal, Garcia asserts that the district court abused its discretion "by giving the crime substantial weight," brief for appellant at 16, even though in his letter to the court he had indicated awareness of the seriousness of his actions underlying his convictions. He offers a conclusory argument that probation would not depreciate the seriousness of his offenses, although he concedes the district court found otherwise. He contends that the PSR shows "several factors, which mitigate in favor of [a] lower sentence to include probation," but does not explain which factors he is referring to or his reasoning for that belief. Brief for appellant at 18.

As the State notes, "even [Garcia's] trial counsel did not believe that probation was appropriate." Brief for appellee at 7. Garcia's letter and the PSR indicate that, at least around the time of sentencing, Garcia himself believed imprisonment suited him best. The PSR covered all of the relevant sentencing factors as set forth in *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018), and the record does not show that the district court relied on any inappropriate consideration in imposing Garcia's sentences. The record supports the district court's sentencing of Garcia. Also, the district court correctly ordered

Garcia's sentence for use of a weapon to commit a felony to be served consecutively to his other sentence as is required under § 28-1205(3). We find the district court did not abuse its discretion in sentencing Garcia, but as noted previously, the district court's oral pronouncement controls.

## Ineffective Assistance of Counsel

[17,18] Garcia claims his trial counsel was ineffective. His counsel for this direct appeal differs from his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record in order to preserve such claim. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*.

[19-21] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant has the burden to show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Spang, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*.

Garcia assigns as error that his trial counsel was ineffective "based upon his guilty pleas not being voluntary, knowingly, and intelligently made due to the lack of communication, lack of explanation of the law, and exertion of undue pressure by trial counsel." All of his claims relate to the entry of his pleas.

[22] To support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018). The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id.*

Garcia does not specifically raise any of the factors set forth above in *Lane* as a basis for his ineffective assistance claims related to his guilty pleas. Rather, he asserts that

> he was not able to discuss fully with his trial counsel about the terms of the plea agreement, the facts thereon, specifically the victim who was named in the Information, the fact that he had a Motion to Discharge outstanding and that if he pled No Contest, no ruling would be made on the Motion nor would he be able to appeal a detrimental decision.

Brief for appellant at 12. The first part of that assertion appears to relate to his claim in his assignment of error regarding "lack of communication" regarding the terms of the plea agreement and the factual basis upon which it was based. The second part of the assertion appears to relate to his claim in his assignment of error regarding "lack of explanation of the law," which seems to be connected to an alleged outstanding motion to discharge. He also asserts that the record on direct appeal "might be sufficient to address his claim of being subjected to pressure on a level and to the extent to render his guilty pleas

invalid." *Id*. at 13. This appears to relate to his claim in his assignment of error regarding "exertion of undue pressure by trial counsel." Garcia then states:

The record is devoid [of] whether [Garcia] had enough time to speak to his attorney. Ultimately, the record, as a whole, indicates that [Garcia] did not knowingly, voluntarily and intelligently plead no contest to the charges but [Garcia] would also state that testimony from himself and his attorneys of their discussions off the record and evidence extrinsic to the record most likely is necessary to address his contentions.

*Id*. at 13. This again appears to broadly relate to the claim in his assignment of error regarding "lack of communication." We will address Garcia's claims of ineffective assistance of trial counsel in the following order: (1) the lack of communication regarding the plea agreement and the factual basis upon which it was based, (2) the lack of explanation of the law related to an alleged outstanding motion to discharge, and (3) the exertion of undue pressure by trial counsel.

As to his allegation of trial counsel's lack of communication regarding the plea agreement and the factual basis upon which it was based, Garcia asserts he "was not able to discuss fully with his trial counsel about the terms of the plea agreement, the facts thereon, specifically the victim who was named in the Information." Brief for appellant at 12. He also argues the "record is devoid [of] whether [he] had enough time to speak to his attorney." *Id.* at 13. The record is sufficient to decide this claim.

At the outset of the plea hearing, the district court specifically informed Garcia that if at any point in time he had questions, he should "feel free to ask the Court or [he could] meet with [his] attorneys." Garcia responded, "Okay." To the extent Garcia believed he needed more time to speak with his attorney before entering his pleas, the court made it clear it would make that time available. During the plea hearing, the State recited the terms of the intended plea agreement: charging

Garcia with one count of second degree assault and one count of use of a weapon to commit a felony (Garcia was expected to plead guilty to each count) and withholding filing of "any associated sexual assault charges." Defense counsel stated the intended plea agreement also dismissed the count of terroristic threats. The State provided its factual basis (which identified the victim and witnesses), as set forth previously. The district court asked Garcia if he agreed that "the State could present that evidence at trial" and that it "would support the conviction for the crime charged that you're pleading guilty to?" Garcia responded, "Yes." Also, as previously discussed, there was an interpreter present at the plea hearing. Garcia answered affirmatively when asked if he could understand what the district court was saying to him with the aid of that interpreter. And although Garcia complains of the interpreter's qualifications on appeal, he does not dispute the accuracy of interpretations of statements and questioning or contend that he did not understand what was said during the proceedings. Notably, the district court directly asked Garcia if the plea negotiations had been fully set out on the record for him. Garcia responded, "Yes." Regardless of the extent of his trial counsel's communication with him before entering his pleas, the record shows Garcia was informed of the contemplated plea agreement and the State's factual basis. He was provided further opportunity to speak with his attorney at the time of the plea hearing, and he never made such a request. Garcia does not provide any explanation for why further communication with his attorney was necessary before entering his plea, and there is nothing in the record to suggest that if he had been able to speak further with his attorney, he would have insisted on going to trial rather than pleading guilty. This claim of ineffective assistance of counsel fails.

Regarding his claim that there was a lack of explanation of the law related to an alleged outstanding motion to discharge and pleading "No Contest," brief for appellant at 12, we note that the pleas in the present case were guilty pleas and there

is no motion to discharge filed or ruled upon in our record. As the State contends, "counsel cannot be ineffective for not explaining how a guilty plea would affect a motion that was never filed." Brief for appellee at 5. We agree. This claim of ineffective assistance of counsel also fails.

[23] As to his final claim, Garcia does not allege with any particularity the basis for his claim related to trial counsel's exertion of undue pressure upon him. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). By definition, a claim insufficiently stated is no different than a claim not stated at all. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). Therefore, if insufficiently stated, an assignment of error and accompanying argument will not prevent the procedural bar accompanying the failure to raise all known or apparent claims of ineffective assistance of trial counsel. *Id*. Accordingly, Garcia's claim about his trial counsel's alleged exertion of undue pressure is not preserved for later review.

## CONCLUSION

For the foregoing reasons, we affirm Garcia's convictions. We also affirm Garcia's sentences. However, the matter is remanded with directions to modify the written sentencing order to reflect the district court's oral pronouncement of 15 to 20 years' imprisonment on "Count I," second degree assault, and 5 to 10 years' imprisonment on "[C]ount II," use of a weapon to commit a felony. In all other respects, the judgment of the district court is affirmed.

Affirmed as modified, and cause
remanded with directions.