IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WOODRICH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEFFREY W. WOODRICH, APPELLANT.

Filed February 25, 2020.    Nos. A-19-683 through A-19-685.

Appeals from the District Court for Douglas County: GARY B. RANDALL, Judge. Judgment in No. A-19-683 vacated, and cause remanded with directions. Judgments in Nos. A-19-684 and A-19-685 affirmed.

Thomas C. Riley, Douglas County Public Defender, and Joseph H. Selde for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

INTRODUCTION

In this consolidated appeal, Jeffrey W. Woodrich appeals from his plea-based convictions in the district court for Douglas County of operating a motor vehicle during a license revocation period in case No. A-19-683 (the operating during revocation case); a violation of previously imposed probation and aggravated driving under the influence (DUI), third offense, in case No. A-19-684 (the probation violation/first DUI case); and aggravated DUI, third offense, in case No. A-19-685 (the second DUI case). Woodrich alleges that the court abused its discretion by imposing excessive sentences in all three cases and by imposing a sentence outside the statutory limits in the operating during revocation case. Because the sentences imposed in the two DUI cases were not excessive, the sentences in case No. A-19-684 and case No. A-19-685 are affirmed. Because the

- 1 -

court imposed an invalid sentence in the operating during revocation case, the sentence in case No. A-19-683 is vacated, and the cause is remanded with directions.

BACKGROUND

*Operating During Revocation Case.*

On August 3, 2018, the State filed an information in the district court, charging Woodrich with one count of operating during revocation in violation of Neb. Rev. Stat. § 60-6,197.06 (Cum. Supp. 2018), a Class IV felony.

Pursuant to a plea agreement, Woodrich agreed to plead guilty to the charge of operating during revocation. The plea agreement also required him to admit to a probation violation and plead guilty to a DUI charge in the probation violation/first DUI case, and to plead guilty to an amended first count in the second DUI case. The State agreed to dismiss a second count in the second DUI case.

A plea hearing was held on February 8, 2019, in all three cases. During the hearing, Woodrich pled guilty to the charge in the operating during revocation case (and to the charges in the other two cases as indicated). The State provided a factual basis for the operating during revocation case, indicating that on or about February 14, 2018, Woodrich was operating a motor vehicle in Douglas County and was stopped by law enforcement for speeding and having obstructed plates, at which time an officer determined that Woodrich's operator's license had been revoked pursuant to another case (original charges in the probation violation/first DUI case) for a period of 15 years. In connection with the operating during revocation case, the district court received exhibit 1, a copy of the conviction showing that Woodrich's license had been previously revoked for a period of 15 years. In all three cases, the court accepted Woodrich's pleas, found him guilty of the charges to which he had pled, and ordered a presentence investigation (PSI).

*Probation Violation/First DUI Case.*

On March 7, 2016, the State filed an information in the district court, charging Woodrich with one count of aggravated DUI, third offense, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010) and Neb. Rev. Stat. § 60-6,197.03(6) (Cum. Supp. 2018), a Class IIIA felony. Woodrich pled guilty to the charge. At the time of Woodrich's plea in 2016, the court received exhibits 1 and 2, certified copies of prior DUI convictions of Woodrich from 2007 and 2012, for purposes of enhancement. The court sentenced Woodrich to 3 years' probation.

The State filed a motion to revoke Woodrich's probation on August 24, 2018, alleging that Woodrich failed to abstain from drugs, failed to report for drug testing, and received new charges.

Pursuant to the plea agreement referenced above, Woodrich agreed to plead guilty to the probation violation and the charge of aggravated DUI, third offense, in the probation violation/first DUI case.

At the February 2019 plea hearing, the State provided a factual basis for the probation violation/first DUI case, indicating that after Woodrich was placed on probation for 3 years in June 2017, a probation officer found him to have violated his probation when he tested positive for PCP on January 11, 2018, and failed to report for drug testing on multiple other specified dates in January and one date in February. Woodrich also received charges of driving during a period of

revocation and operating without an ignition interlock permit. The prosecutor indicated that a probation officer would testify that, based on these violations, Woodrich was in violation of his probation. The prosecutor also indicated that the events described occurred in Douglas County. As indicated above, the district court accepted Woodrich's pleas in this and the other two cases, found him guilty of the charges to which he had pled, and ordered a PSI.

*Second DUI Case.*

On August 3, 2018, the State filed an information in the district court, charging Woodrich with one count of aggravated DUI, fourth offense, in violation of § 60-6,196 and § 60-6,197.03(8), a Class IIA felony, and one count of operating during revocation in violation of § 60-6,197.06, a Class IV felony.

Pursuant to the plea agreement referenced above, Woodrich, agreed to plead guilty to an amended charge of aggravated DUI, third offense, a Class IIIA felony, and the State agreed to dismiss the second charge.

At the February 2019 plea hearing, the State provided a factual basis for the second DUI case, indicating that on or about June 2, 2018, law enforcement made contact with a party operating a motor vehicle, who was identified as Woodrich. Officers conducted a traffic stop of Woodrich, who was exhibiting signs of intoxication including a strong odor of alcoholic beverage coming from his person, slurred speech, and bloodshot, watery eyes. Officers conducted a DUI investigation, determined Woodrich to be operating under the influence of alcohol, and said Woodrich could not safely operate a motor vehicle. Woodrich refused to submit to "a DataMaster test." The prosecutor indicated that the events described occurred in Douglas County. In connection with the second DUI case, the district court received copies of prior DUI convictions of Woodrich for purposes of enhancement (a copy of exhibit 1, also received in the operating during revocation case, and a copy exhibit 2, previously received at the time of Woodrich's 2016 plea in the probation violation/first DUI case) As indicated above, the district court accepted Woodrich's pleas in this and the other two cases, found him guilty of the charges to which he had pled, and ordered a PSI.

*Sentencing in All Cases.*

A sentencing hearing was held on June 20, 2019, in all three cases. In the operating during revocation case, the court sentenced Woodrich to 3 years' imprisonment and 12 months' postrelease supervision. The court did not initially mention the imposition of a period of license revocation with the sentence in this case. In the probation violation/first DUI case, the court sentenced Woodrich to 3 years' imprisonment and 18 months' postrelease supervision, and imposed a 15-year license revocation. In the second DUI case, the court also sentenced Woodrich to 3 years' imprisonment and 18 months' postrelease supervision, but again, it did not mention the imposition of any period of license revocation. The court stated that it was ordering the sentences to be served consecutively. And, although the court had initially divided 365 days of credit for time served between the three cases, it later clarified that all 365 days of credit were to be applied to the sentence in the second DUI case.

After the court had stated the sentences for all three cases, the following exchange took place between the district court and the attorneys:

[DEFENDANT'S ATTORNEY]: Judge, if I might. On [the operating during revocation case], that was a Class 4 felony, which means you can only give him two years.

THE COURT: I'm sorry. All right. Why don't you have him sign the PRS forms while I look at that.

[DEFENDANT'S ATTORNEY]: Thank you.

THE COURT: [Prosecutor], do you want to weigh in on that issue?

[PROSECUTOR]: Judge, for the sentence under [the operating during revocation case], for a Class 4 felony, the maximum is two years.

THE COURT: Okay.

Other than acknowledging the attorneys' statements about the statutory maximum, the court did not make any further statements about the term of imprisonment imposed in the operating during revocation case. In response to further questioning from the prosecutor, the court clarified that it was imposing a 15-year license revocation in all three cases. The court also indicated that it was declining to approve Woodrich for an interlock device on the 15-year license revocation "at this point."

Subsequently, the court entered written sentences in all three cases. The orders in the DUI cases reflected the above oral pronouncements (and allowed Woodrich to apply for an approved ignition interlock device and ignition interlock driving permit after serving 45 days of revocation); however, in the operating during revocation case, the sentencing order did not include the 15-year license revocation period, and it stated that the period of incarceration was 3 years.

## ASSIGNMENTS OF ERROR

Woodrich asserts that the district court abused its discretion by imposing excessive sentences in all three cases and by imposing a sentence outside the statutory limits in the operating during revocation case.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Sentences in DUI Cases Not Excessive.*

Woodrich asserts that the district court abused its discretion by imposing excessive sentences in all three cases. We find that the sentences imposed in the DUI cases were not excessive, but we find plain error in the sentence imposed in the operating during revocation and have addressed the sentence imposed in that case separately below. Woodrich was convicted of two Class IIIA felonies, a probation violation and aggravated DUI, third offense, in the first DUI

case, and of aggravated DUI, third offense, in the second DUI case. §§ 60-6,196 and 60-6,197.03(6). The court sentenced him to 3 years' imprisonment and 18 months' postrelease supervision and imposed a 15-year license revocation in both DUI cases. Class IIIA felonies are punishable by a minimum of 180 days' incarceration in the city or county jail and a maximum of 3 years' imprisonment with 9 to 18 months of postrelease supervision if imprisonment is imposed, and/or a $10,000 fine, and 15 years' license revocation. See Neb. Rev. Stat. §§ 28-105 (Supp. 2019), 60-6,196, and 60-6,197.03(6). The sentences imposed in the DUI cases were within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Iddings, supra*.

During the sentencing hearing, the district court indicated that it had "spent a lot of time looking at" the PSI, noting that although Woodrich had many previous convictions relating to chemical dependency issues, including multiple DUIs, he had been placed on probation in 2016. The court also noted that despite that opportunity, Woodrich had committed subsequent law violations, had a positive drug test, and had multiple "failures to report" while on probation. The court stated that it did not find Woodrich to be an appropriate candidate for probation, and that he was "dangerous."

A review of the level of service/case management inventory (LS/CMI) in the PSI shows that Woodrich's overall score of 30 placed him in the "very high" risk category for recidivism. Of the eight domains assessed in the LS/CMI to determine risk factors for recidivism, Woodrich was rated in the "high" risk categories for three domains and the "very high" risk category for another two of the eight domains. Woodrich was also administered additional assessments, including the Simple Screening Instrument on which he was rated in the "moderate to high risk" of chemical abuse category with a score of 11 out of 14, and the Nebraska Driver Risk Inventory which placed him in the "maximum risk" range for drugs and alcohol. As noted by the probation officer, Woodrich's criminal history shows "an extensive history of arrests and noncompliance with society laws and the directives of the courts." As an adult, Woodrich has been granted four separate terms of probation, only successfully completing one of those terms. The probation officer noted that Woodrich "continues to place himself and others at extreme risk while in the community."

Our review of the record shows that the court did not abuse its discretion in considering the relevant factors and did not impose excessive sentences in the DUI cases. Accordingly, we affirm Woodrich's sentences following his convictions in cases Nos. A-19-684 and A-19-685.

*Plain Error in Operating During Revocation Case Sentence.*

Operating during revocation is a Class IV felony. § 60-6,197.06. Class IV felonies are punishable by a maximum of 2 years' imprisonment, 12 months' postrelease supervision, and/or a $10,000 fine, and 15-year license revocation and a minimum of 9 months' postrelease supervision if imprisonment is imposed. §§ 28-105 (Cum. Supp. 2018) and 60-6,197.06. Thus, Woodrich's sentence of 3 years' incarceration is not within the statutory limits. Additionally, we note that although the district court orally imposed a 15-year license revocation in this case, the period of license revocation was not incorporated into the written order in this case.

A sentence validly imposed takes effect from the time it is pronounced. *State v. Lessley*, 301 Neb. 734, 919 N.W.2d 884 (2018). In the event of a discrepancy between an oral pronouncement of sentence and the written order of the sentence, the oral pronouncement controls. *State v. Nelson*, 27 Neb. App. 748, 936 N.W.2d 32 (2019). Where a portion of a sentence is valid and a portion is invalid or erroneous, the court has authority to modify or revise the sentence by removing the invalid or erroneous portion of the sentence if the remaining portion of the sentence constitutes a complete valid sentence. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). We also note that under certain circumstances, a court can correct an inadvertent mispronouncement of sentence. The circumstances under which a judge may correct an inadvertent mispronouncement of a sentence are limited to those instances in which it is clear that the defendant has not yet left the courtroom; it is obvious that the judge, in correcting his or her language, did not change in any manner the sentence originally intended; and no written notation of the inadvertently mispronounced sentence was made in the records of the court. *State v. Lessley, supra*.

The written order in the operating during revocation case contains a term of imprisonment outside the statutory limits and does not contain the required period of license revocation, and is thus an invalid sentence. And, while the court's oral pronouncement was valid with respect to the period of postrelease supervision and period of license revocation imposed, the court never corrected its mispronouncement of the term of imprisonment in this case. Although the correct statutory maximum was brought to the court's attention during the sentencing hearing, and the court acknowledged this information, it never corrected its initial mispronouncement of the term of imprisonment. The court's oral pronouncement cannot be corrected by this court because removal of the invalid portion does not constitute a complete valid sentence. An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced. *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018). Accordingly, we vacate the sentence in case No. A-19-683, and remand the cause with directions to sentence Woodrich in accordance with the relevant statutes.

CONCLUSION

The court did not abuse its discretion in sentencing Woodrich in the DUI cases, and we affirm his sentences following his convictions in cases Nos. A-19-684 and A-19-685. Because the

court imposed an invalid sentence in the operating during revocation case, the sentence in case No. A-19-683 is vacated, and the cause is remanded with directions.

JUDGMENT IN NO. A-19-683 VACATED, AND CAUSE REMANDED WITH DIRECTIONS.

JUDGMENTS IN NOS. A-19-684 AND A-19-685 AFFIRMED.