Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/30/2018 08:10 AM CST

State of Nebraska, appellee, v.
Tyeric L. Lessley, appellant.
___ N.W.2d ___

Filed November 30, 2018.    No. S-18-096.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

3. **Homicide: Lesser-Included Offenses: Jury Instructions.** A court is required to instruct the jury on all lesser degrees of criminal homicide for which there is proper evidence before the jury, whether requested to do so or not.

4. ____: ____: ____. A court is not required to instruct a jury on lesser degrees of homicide where the first degree murder charge against the defendant is based upon a theory of felony murder.

5. **Sentences: Time.** A sentence validly imposed takes effect from the time it is pronounced.

6. **Sentences.** When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed.

7. **Sentences: Judges: Records.** The circumstances under which a judge may correct an inadvertent mispronunciation of a sentence are limited to those instances in which it is clear that the defendant has not yet left the courtroom; it is obvious that the judge, in correcting his

or her language, did not change in any manner the sentence originally intended; and no written notation of the inadvertently mispronounced sentence was made in the records of the court.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Thomas C. Riley, Douglas County Public Defender, Matthew J. Miller, and Natalie M. Andrews for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Tyeric L. Lessley was convicted of first degree murder, first degree assault, two counts of use of a weapon to commit a felony, and possession of a deadly weapon by a prohibited person. Lessley appeals, arguing that the evidence was not sufficient to support his convictions and that he was entitled to a manslaughter instruction. We affirm Lessley's convictions and sentences for first degree murder and first degree assault, affirm his convictions and vacate the sentences for use of a weapon to commit a felony and possession of a deadly weapon by a prohibited person, and remand the cause for resentencing.

## BACKGROUND

*Events of October 29, 2016.*

Between 4 and 4:30 a.m. on October 29, 2016, Curtis Goodwin was awake in the home shared with his fiance, Suzanne Pope. The home was located on North 39th Street in Omaha, Nebraska, at the corner of 39th and Kansas Streets. Goodwin was paying bills on his laptop computer, and Pope

was sleeping in a bed in the main floor living room of the residence, which the couple used as their bedroom. Also in the home was Pope's 7-year-old daughter.

During this time, Goodwin left the home through the back door to investigate a knocking sound he heard at the front of the house. Goodwin testified that family and friends never used the front door of the residence, which faced North 39th Street, but instead entered and exited through the rear door. Indeed, pictures of the scene show that the front door was blocked from the inside by Goodwin and Pope's bed.

Goodwin grabbed a baseball bat before leaving the house. Goodwin then walked around to his front door, where he discovered a male knocking on the door. Goodwin asked the male if he could help him. The male pointed a gun in Goodwin's face and responded, "Yeah, n-----, I'm your worst mother fucking nightmare." The male, whom Goodwin testified he did not recognize, then told Goodwin to get into the house.

The two walked around the side of the house to the back entrance. Goodwin testified that at some point along the way, he dropped the bat. Once inside, the male told Goodwin to "give me all your money and your shit." Goodwin woke Pope to tell her that someone was there to rob them. According to Goodwin, both he and Pope told the intruder they did not have any money. At that point, the intruder shot Pope, took Goodwin's laptop, and shot Goodwin as Goodwin lunged at him.

Goodwin was able to follow the intruder out of the house and into the backyard, where Goodwin collapsed as the intruder ran down the street carrying Goodwin's laptop. At this time, Goodwin noticed an unfamiliar dark-colored Chevrolet Suburban or Tahoe parked in his driveway, which was located in the backyard of the residence and opened onto Kansas Street. Goodwin testified that this vehicle had no license plates and described the back doors as opening "like kitchen cabinets." The intruder walked back past Goodwin. By this time,

Goodwin had retrieved the bat he dropped earlier and swung it in the direction of the intruder. Goodwin testified that he hit "something," but did not know if it was the intruder. The intruder then shot Goodwin again, dropped the laptop, and drove away in the vehicle, westbound on Kansas Street.

Pope was killed and Goodwin was injured in this incident. Goodwin was in a coma for nearly 3 months and sustained the loss of one of his kidneys, his spleen and gallbladder, and several feet of his small intestine. Goodwin has been diagnosed with short bowel syndrome, which requires liquid nutrition and a colostomy bag. Complications from his injuries caused Goodwin to fall into a second coma, during which he nearly died.

"ShotSpotter" evidence corroborated the timing of the gunshots. ShotSpotter is a technology utilized by the Omaha Police Department to determine the location of gunshots based upon sounds captured by microphones positioned in certain parts of the city. Here, ShotSpotter captured the sound of two gunshots, 20 seconds apart, sounding from outside Goodwin and Pope's residence at 4:30 and 4:31 a.m. Neighbors also testified they heard gunshots around that time.

In addition, neighbors witnessed a vehicle travel west from the residence after they heard the gunshots. One neighbor testified that she saw a dark blue, green, or black Suburban or Tahoe. A second neighbor testified that he witnessed a dark-colored Suburban or Tahoe with a loud exhaust, custom wheels, and tinted windows, and that based upon his experience with vehicles, he estimated the vehicle was between a 1996 and a 1999 model due to its more squared frame.

*DNA and Other Evidence.*

Multiple items were located at the scene of the shooting. In particular, one firearm projectile was found in the driveway of the residence; another was dug from a wall of the living room of the residence; and a third was retrieved from Pope's body during autopsy. A firearms examiner determined that all

three projectiles were fired from the same firearm. No firearm was ever recovered in this case.

Goodwin's laptop computer was found in the backyard near the driveway. It had a partial shoeprint on its cover. A tread expert testified that the shoeprint was consistent with a Nike "Shox" tennis shoe. The laptop was swabbed for DNA, but the only profiles recovered were Goodwin's and Pope's; testing as to Lessley was inconclusive.

Various items of evidence were also recovered from the scene and tested. A substance appearing to be blood was found on the driveway and on a section of the bat. In addition, a swab was taken from the end of the bat. The State's DNA expert testified that the blood found on the driveway was a match to Lessley's profile and that the probability that the DNA belonged to another person was 1 in 1.67 quintillion. Lessley could also not be excluded as a contributor to the DNA found at the end of the bat, and the probability that the DNA belonged to a person other than Lessley was 1 in 6.60 quadrillion. Finally, Lessley could not be excluded as a contributor to the DNA from the blood found elsewhere on the bat, with the probability of that DNA belonging to another person being 1 in 23.9 trillion.

Initially, the DNA profile obtained was from an unidentified male, but a DNA database eventually identified the male as Lessley. Based upon that identification, law enforcement determined that on October 12, 2016, Lessley had purchased a 2001 green Chevrolet Suburban from an Omaha dealership. That dealership had global positioning system (GPS) records placing the Suburban less than a mile southeast of the Goodwin-Pope residence at 4:18 a.m. on October 29. One of the investigating officers testified that it had taken him about 2 minutes to drive from the residence to the location noted in the GPS records.

Lessley was arrested in January 2017. At the time of arrest, Lessley was wearing a pair of Nike Shox shoes, which were consistent with the shoeprint found on the laptop computer.

Lessley's Suburban was impounded at the time of his arrest. The Suburban still had in-transit signs and no license plates. It also had tinted windows, "barn-door" style rear doors, and a louder-than-stock exhaust. A search of Lessley's residence recovered custom aftermarket rims.

At the time of the shooting, Lessley and his girlfriend lived a 3-minute drive northwest of the Goodwin-Pope residence. Lessley's girlfriend testified that Lessley returned from work on October 28, 2016, between 11:45 p.m. and 12 a.m. She fell asleep shortly after Lessley returned home and was awoken before 5:30 a.m. by Lessley talking on the telephone. At this time, Lessley's girlfriend noticed a "hole" in the right side of Lessley's forehead that he did not have when he came home from work. Lessley's cell phone records show that he was on the cell phone between 4:58 and 5:06 a.m. on October 29. Lessley later told his girlfriend during a jailhouse telephone call that she did not have to say anything at his trial.

Lessley was charged with first degree murder for Pope's death, under alternative theories of premeditated murder or felony murder during the commission of a robbery or attempted robbery. Additionally, Lessley was charged with first degree assault for Goodwin's injuries, possession of a deadly weapon by a prohibited person, and two counts of use of a weapon to commit a felony.

On the first day of trial, the State amended the information by interlineation to remove the premeditated murder theory. Trial proceeded under the State's felony murder theory. The jury was instructed only on felony murder and was not instructed as to any other theory of first degree murder, or as to any other degree of murder. Lessley did not object to the instructions as given and did not offer any proposed instructions. Lessley was found guilty on all five counts in less than 2 hours.

The district court initially sentenced Lessley to consecutive sentences of life imprisonment for felony murder, 20 to 20 years' imprisonment for first degree assault, 3 to 3 years'

imprisonment for possession of a weapon by a prohibited person, and 5 to 5 years' imprisonment on each use conviction. Following a discussion with counsel for the State and for Lessley, the court added 1 day to the maximum term of each sentence (except the life sentence), so that the minimum and maximum terms would not be the same.

Lessley appeals.

### ASSIGNMENTS OF ERROR

On appeal, Lessley assigns that (1) there was insufficient evidence to support his convictions and (2) the district court erred in not instructing the jury on the lesser-included offense of manslaughter.

### STANDARD OF REVIEW

[1] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

[2] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[2]

### ANALYSIS

*Sufficiency of Evidence.*

In his first assignment of error, Lessley contends that the evidence was insufficient to support his convictions. This contention is without merit.

---

[1] *State v. McCurdy, ante* p. 343, 918 N.W.2d 292 (2018).

[2] *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018).

Lessley argues that "[t]he testimony provided by witnesses was not consistent with the testimony of one another, nor was it consistent with other evidence adduced at trial so as to amount to competent evidence . . . ."[3] Lessley concedes that DNA profiles were obtained, but argues that it is not possible to "determine definitively whether or not the evidence collected belongs to a particular individual. . . . [E]ven if the DNA collected from the bat and driveway belonged to [Lessley], this evidence does not connect [Lessley] to the crimes" conclusively, because it is not possible to discern how long the DNA has been present at a particular location.[4] Finally, Lessley takes issue with multiple individual pieces of evidence to support his conclusion that a jury should have found reasonable doubt.

But this is not our standard of review. This court does not resolve conflicts in the evidence or reweigh the evidence, but instead only reviews the evidence to determine whether the evidence offered supported the convictions.

In this case, Goodwin testified that an intruder pointed a gun at him and told him to give him all his money and "shit." In addition, Goodwin testified that the intruder took a laptop computer from the residence. This testimony supported the robbery or attempted robbery allegations underlying the felony murder charge.

Goodwin further testified that he hit "something" with his bat when he was struggling with the intruder. DNA evidence found on the bat and on the driveway near where the struggle occurred matched Lessley, with a probability of between 1 in 23.9 trillion and 1 in 1.67 quintillion (depending on the evidence) that the DNA belonged to another individual. Meanwhile, Lessley sustained an injury on his forehead during the same timeframe as when Goodwin hit "something" with the bat.

---

[3] Brief for appellant at 19.

[4] Id.

Also found in the driveway at the Goodwin-Pope residence was a laptop computer with a shoeprint on it. The shoeprint was consistent with a Nike Shox shoe, the same type of shoe worn by Lessley at the time of his arrest. Lessley's vehicle generally matched the description of a vehicle observed leaving the scene. The vehicle's GPS records indicated that it was within a 2-minute drive of the residence approximately 12 minutes prior to the shooting.

The evidence plainly supported Lessley's convictions. There is no merit to Lessley's first assignment of error.

*Manslaughter Instruction.*

In his second assignment of error, Lessley contends that the district court erred in not instructing the jury on the elements of manslaughter. The State contends both that manslaughter is not a lesser-included offense of felony murder, and thus no instruction was required, and that in any case, there was insufficient evidence to support a manslaughter instruction.

[3] Neb. Rev. Stat. § 29-2027 (Reissue 2016) provides in part that "[i]n all trials for murder the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it is murder in the first or second degree or manslaughter." We have held that under § 29-2027, a court is required to instruct the jury on all lesser degrees of criminal homicide for which there is proper evidence before the jury, whether requested to do so or not.[5]

[4] But a court is not required to instruct a jury on lesser degrees of homicide where the first degree murder charge against the defendant is based upon a theory of felony murder.[6] The distinction between felony murder and other degrees of murder involves the element of intent. We have reasoned that when a first degree murder charge is predicated on a theory of

---

[5] *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012).

[6] See, e.g., *State v. Schroeder*, 279 Neb. 199, 777 N.W.2d 793 (2010); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994).

premeditated murder, second degree murder, or voluntary manslaughter, the intent of the defendant is relevant, but that "[i]n a felony murder case, the proof of a particular mental state is not required as to the killing."[7] We therefore conclude that under § 29-2027, where a defendant is charged solely under a felony murder theory, a jury need not be instructed on the lesser degrees of homicide.

But in any event, there was insufficient evidence to support a manslaughter instruction. Lessley argues that there was evidence in the record indicating there was a struggle at the Goodwin-Pope home. As such, there was evidence adduced that there had been a quarrel, and an instruction should have been given.

Lessley's contentions are without merit. In *State v. Smith*,[8] we concluded that evidence that the defendant and the victim had been arguing was not enough to support a sudden quarrel manslaughter instruction. We reasoned that even if there had been an argument, there was no evidence about who started the argument, what words were said or actions taken, or whether there was evidence of provocation. We noted that "[i]n the absence of some provocation, a defendant's anger with the victim is not sufficient to establish the requisite heat of passion"[9] for sudden quarrel manslaughter.

Here, Lessley points us to some disarray at the scene, including a stove seemingly out of place, refrigerator magnets on the floor, a tipped-over laundry basket and fan, and the bat used on the intruder inside the residence (rather than outside, where Goodwin testified he swung at the intruder and hit "something"). But there is no evidence in the record that these items were in disarray because of these events. And there is certainly no evidence of any provocation that might have

---

[7] *State v. McDonald*, 195 Neb. 625, 636-37, 240 N.W.2d 8, 15 (1976). Cf. *Hopkins v. Reeves*, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998).

[8] *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

[9] *Id*. at 735, 806 N.W.2d at 395.

provided any justification for the actions in this case. Lessley's counsel did ask Goodwin whether Pope and Lessley had been having an affair, but Goodwin denied that allegation and counsel offered no evidence to back up that assertion.

There is no merit to Lessley's second assignment of error.

*Plain Error in Sentencing.*

Finally, the State contends that the district court committed plain error with respect to the sentences imposed for Lessley's convictions for possession by a prohibited person and use of a deadly weapon.

[5-7] A sentence validly imposed takes effect from the time it is pronounced.[10] When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed.[11] Any attempt to do so is of no effect, and the original sentence remains in force.[12] The circumstances under which a judge may correct an inadvertent mispronouncement of a sentence are limited to those instances in which it is clear that the defendant has not yet left the courtroom; it is obvious that the judge, in correcting his or her language, did not change in any manner the sentence originally intended; and no written notation of the inadvertently mispronounced sentence was made in the records of the court.[13]

The district court originally sentenced Lessley to 3 to 3 years' imprisonment for the possession conviction and to 5 to 5 years' imprisonment for the use convictions. During the same hearing, however, the district court attempted to modify those sentences to 3 to 3 years' imprisonment plus 1 day and to 5 to 5 years' imprisonment plus 1 day, respectively. This

---

[10] *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000).

[11] *Id.*

[12] *Id.*

[13] *Id.*

modification was done after discussion with the parties due to the prosecuting attorney's concern that the minimum and maximum terms of the sentences could not be the same.

The State argues that the original sentences for the use and possession convictions were valid and thus could not be modified. But the State agrees that the original sentence for first degree assault was invalid and thus was subject to modification. Use of a weapon to commit a felony is a Class IC felony, punishable by 5 to 50 years' imprisonment. Possession of a deadly weapon by a prohibited person is a Class ID felony, punishable by 3 to 50 years' imprisonment. First degree assault is a Class II felony, punishable by 1 to 50 years' imprisonment.

The State bases its argument in the language of Neb. Rev. Stat. § 29-2204 (Supp. 2017). As relevant, § 29-2204 provides:

(1) Except when a term of life imprisonment is required by law, in imposing a sentence upon an offender for any class of felony other than a Class III, IIIA, or IV felony, the court shall fix the minimum and the maximum terms of the sentence to be served within the limits provided by law. The maximum term shall not be greater than the maximum limit provided by law, and:

(a) The minimum term fixed by the court shall be any term of years less than the maximum term imposed by the court; or

(b) The minimum term shall be the minimum limit provided by law.

We turn first to the use convictions. Section 29-2204(1) provides that the maximum term shall not be greater than the maximum term provided by law, which, for a Class IC felony, is 50 years. As for the minimum term, it shall be *either* any term of years less than the maximum term imposed by the court *or* the minimum term provided by law. The State argues that the sentences of 5 to 5 years' imprisonment initially imposed on Lessley by the district court were proper, because the maximum term imposed by the court (5 years) was not

greater than the maximum term provided for by law (50 years) and the minimum term was the minimum term provided for by law (5 years) as set forth in § 29-2204(1)(b).

The same reasoning goes for the possession conviction. The maximum term for a Class ID felony is 50 years; the maximum term imposed by the district court of 3 years was less than 50 years, and the minimum term of 3 years is the minimum provided for by law. As such, these sentences were valid, and the attempt to modify them was unsuccessful.

Because the district court's intended sentences are apparent from the record,[14] we vacate the sentences imposed for the use and possession convictions and remand the cause for resentencing Lessley in conformity with the initial sentences imposed by the district court of 5 to 5 years' imprisonment for each use conviction and 3 to 3 years' imprisonment for the possession conviction.

We turn now to the sentence imposed on Lessley's first degree assault conviction. The State asserts that the sentence initially imposed by the district court of 20 to 20 years' imprisonment was not valid.

The maximum term provided for by law for a Class II felony is 50 years' imprisonment. The 20-year maximum imposed on Lessley was less than the allowed maximum. But the minimum imposed by the district court was also 20 years' imprisonment. The minimum provided for by law is 1 year, so the minimum term imposed on this conviction did not comply with § 29-2204(1)(b). Nor did it comply with § 29-2204(1)(a), which provides that "[t]he minimum term fixed by the court shall be any term of years less than the maximum term imposed by the court[.]" As such, the State is correct that the initial sentence of 20 to 20 years' imprisonment was invalid. Therefore, the sentence was subject to modification, and we accordingly affirm the modified sentence of 20 to 20 years' imprisonment plus 1 day for first degree assault.

---

[14] See *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

## CONCLUSION

Lessley's convictions are affirmed. Lessley's sentences for first degree felony murder and first degree assault are also affirmed. But the sentences imposed for use of a weapon to commit a felony and possession of a deadly weapon by a prohibited person are vacated and new sentences are to be imposed as set forth above. We remand this cause to the district court for resentencing.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED FOR RESENTENCING.