Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/07/2025 08:10 AM CST

State of Nebraska, appellee, v.
Brant A. Geller, appellant.

___ N.W.3d ___

Filed February 7, 2025.    No. S-24-438.

1. **Judgments: Appeal and Error.** An appellate court reviews questions of law independently of the lower court's conclusion.
2. **Sentences: Appeal and Error.** Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits.
3. **Sentences.** When a sentence orally pronounced at the sentencing hearing differs from a later written sentence, the former prevails.
4. **Sentences: Time.** A sentence validly imposed takes effect from the time it is pronounced.
5. **Sentences.** When a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed.
6. **Sentences: Judges: Records.** The circumstances under which a judge may correct an inadvertent mispronouncement of a sentence are limited to those instances in which it is clear that the defendant has not left the courtroom; it is obvious that the judge, in correcting his or her language, did not change in any manner the sentence originally intended; and no written notation of the inadvertently mispronounced sentence was made in the records of the court.
7. **Sentences.** It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. This is true even when the crimes arise out of the same incident.
8. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

Appeal from the District Court for Lancaster County, Kevin R. McManaman, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Matthew F. Meyerle for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Papik, J.

Brant A. Geller pled no contest to three counts of possession of a controlled substance and one count of attempted possession of a deadly weapon by a prohibited person. The district court orally pronounced his sentences and issued a written sentencing order. A few hours later, however, the district court issued an amended sentencing order. Geller now appeals, challenging only his sentences. He claims the district court erred because the amended sentencing order was contrary to its earlier oral pronouncement of the sentences. He also argues that his sentences were excessive. We find no merit to his contentions and therefore affirm.

## BACKGROUND

*Initial Charges and Plea Agreement.*

This case began when Geller was charged with four counts of possession of a controlled substance and one count of possession of a deadly weapon by a prohibited person. Geller and the State later entered into a plea agreement. Pursuant to the plea agreement, Geller pled no contest to three counts of possession of a controlled substance and one count of attempted possession of a deadly weapon by a prohibited person, each of which were set forth in an amended information. Because the enumeration of the counts in the amended information is relevant to Geller's arguments regarding his sentences, we note that the possession of a controlled substance charges were

listed as counts 1 through 3, and the attempted possession of a deadly weapon by a prohibited person charge was listed as count 5.

According to the State's factual basis for the no contest pleas, law enforcement officers received a report that Geller's vehicle had been found unoccupied with a box for a handgun inside. Officers later found Geller at a gas station and searched his vehicle after a drug detection dog indicated the presence of narcotics. Inside the vehicle, officers found a zipper pouch containing several controlled substances and a backpack containing a pair of brass knuckles. Geller had previously been convicted of a felony.

The district court accepted Geller's no contest pleas. Pursuant to the same plea agreement, Geller entered no contest pleas to charges of third degree domestic assault and attempted witness tampering that were filed in another case. The district court also accepted Geller's no contest pleas to those charges. The district court scheduled a single sentencing hearing for Geller's convictions in both cases.

*Sentencing Hearing.*

At the sentencing hearing, counsel for both Geller and the State presented arguments and Geller expressed remorse during allocution. The district court then discussed the factors it considered in imposing the sentences, specifically mentioning Geller's age, background, and criminal history.

Before announcing the specific terms of the sentences, the district court stated,

> Now with regard to sentencing, you had quite a collection of drugs, and you had four charges. One was dropped, and then your possession of a deadly weapon by a prohibited person — that's a Class III felony — was dropped down to an attempt, which was a Class IV felony. In that case, I am going to run the sentences for the drugs concurrently. But the weapon was a separate crime. And it's not just a matter of Adderall versus alprazolam or hydrocodone. It was a weapon that you're not allowed

to have, *so that's going to be consecutive*; and then the next case is consecutive.

(Emphasis supplied.)

The district court then stated the specific terms of the sentence for each conviction. For each of the convictions for possession of a controlled substance, the district court sentenced Geller to 6 months' imprisonment and 12 months' post-release supervision. For the attempted possession of a deadly weapon by a prohibited person conviction, the district court sentenced Geller to 18 months' imprisonment and 12 months' post-release supervision.

After reciting the various terms of imprisonment and post-release supervision for each conviction, the district court stated: "The sentence is consecutive from today's date with any sentence currently being served by [Geller] and is consecutive to the sentence[s] imposed in [the other case]. Counts 1, 2 and 3 are to be served concurrently. *Count 5 is to be served consecutive to Counts 1, 2 and 3.*" (Emphasis supplied.)

Then, after stating that Geller would be remanded to the custody of the Nebraska Department of Correctional Services and entitled to some credit for time served, the district court said, "Following release from incarceration, [Geller] will serve the term of 12 months post-release supervision on each count, *concurrently*, under the supervision of the Office of Probation Administration." (Emphasis supplied.)

Still later at the sentencing hearing, the district court stated that Geller

shall pay the probation administrative enrollment fee of $30 and the monthly programming fee of $25 per month for 12 months; Those fees are due and payable to the clerk of the district court on or before the 10th day of each month following release from incarceration — *should be for 24 months*, the 12 $25 per month — shall pay for chemical testing on post-release supervision in the amount of $5 per month *for 24 months* . . . .

(Emphasis supplied.)

A written sentencing order entered on the same day included many of the same provisions the district court recited orally. After setting forth the various terms of incarceration and post-release supervision, the district court stated in its written sentencing order, "Counts I, II & III are to be served concurrently. Count V is to be served consecutive to Counts I-III." The written sentencing order also stated under a heading titled "**ORDER FOR POST-RELEASE SUPERVISION**" that Geller "shall serve a term of 12 months of Post-Release Supervision, on each count, concurrently" but also that Geller "[s]hall pay a monthly Probation Programming Fee of $25.00 per month for 24 months" and "[s]hall pay for chemical testing while on post-release supervision in the amount of $5.00 per month for 24 months."

A few hours after entering its written sentencing order, the district court issued an amended sentencing order. The amended sentencing order provided that "the Order for Post-Release Supervision listed in the Order of Sentence does not correspond with the sentence of the court and was in error." The amended order continued:

> **IT IS THEREFORE ORDERED** that the Order for Post-Release Supervision is amended as follows:
>
> Following release from the sentence of incarceration imposed by the Court, the defendant shall serve a term of 12 months of Post-Release Supervision, on each count, under the supervision of the Office of Probation Administration. *Counts I, II & III are to be served concurrently and Count V is consecutive to Counts I, II & III*.
>
> All other terms of the [original] Order of Sentence of May 9, 2024, not modified by this order remain in full force and effect. An amended commitment is to issue.

(Emphasis supplied.)

Geller filed a timely appeal, and we moved the case to our docket.

## ASSIGNMENTS OF ERROR

Geller assigns that the district court erred by issuing an amended sentencing order that was contrary to the court's orally pronounced sentence. He also assigns that the district court erred by ordering his sentence for attempted possession of a deadly weapon by a prohibited person to run consecutively to his sentences for possession of a controlled substance and that his sentences, as a whole, were excessive.

## STANDARD OF REVIEW

[1] Whether the district court erred by issuing an amended sentencing order that is contrary to the orally pronounced sentence presents a question of law. See *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000). An appellate court reviews questions of law independently of the lower court's conclusion. *Herman v. Peter Tonn Enters., ante* p. 52, 13 N.W.3d 177 (2024).

[2] Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Dejaynes-Beaman*, 317 Neb. 131, 8 N.W.3d 779 (2024).

## ANALYSIS

*Permissibility of Amended Sentencing Order.*

We first address Geller's argument that the district court erred by issuing a written sentencing order that was contrary to the sentence it orally pronounced at the sentencing hearing. According to Geller, the district court ordered each term of post-release supervision to run concurrently to the others at the sentencing hearing but attempted to change course in the amended sentencing order by ordering the term of post-release supervision on the weapon conviction to run consecutively to the terms of post-release supervision on the other convictions. Geller argues that our precedent did not permit the district court to issue a written sentencing order contrary to the sentence it orally pronounced at the sentencing hearing.

Consequently, he asks us to find the amended sentencing order was of no effect.

[3-6] As Geller points out, there is ample authority from this court recognizing that a sentencing court cannot modify a validly imposed oral sentence via a subsequent written sentencing order. We have held that when a sentence orally pronounced at the sentencing hearing differs from a later written sentence, the former prevails. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016); *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009). This follows from our holding that a sentence validly imposed takes effect from the time it is pronounced and that when a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. *State v. Lessley*, 301 Neb. 734, 919 N.W.2d 884 (2018); *Schnabel, supra*. We have said that any attempt to do so is of no effect, and the original sentence remains in force. *Lessley, supra*; *Schnabel, supra*. We have also recognized that the circumstances under which a judge may correct an inadvertent mispronouncement of a sentence are limited to those instances in which it is clear that the defendant has not left the courtroom; it is obvious that the judge, in correcting his or her language, did not change in any manner the sentence originally intended; and no written notation of the inadvertently mispronounced sentence was made in the records of the court. *Lessley, supra*.

Geller argues that under the foregoing principles, it is the district court's oral pronouncement of his sentences that must govern over the amended sentencing order. But the principles upon which Geller relies, well-established as they are, can help Geller in this case only if the substance of the district court's orally pronounced sentences can be determined. It would make little sense for us to say that the orally pronounced sentences must govern if we cannot determine what the terms of the orally pronounced sentences were. And, on the question of whether all Geller's terms of post-release supervision were

to run concurrently or the term of post-release supervision on the weapon conviction was to run consecutively to the other terms, we find the district court's oral pronouncement anything but clear.

Geller focuses exclusively on one sentence of the district court's oral pronouncement when the district court did indeed state that Geller would "serve the term of 12 months post-release supervision on each count, concurrently." Based on that language alone, Geller argues that while the district court ordered his term of incarceration on the weapon conviction to run consecutively to his terms of incarceration on the possession convictions, it ordered his terms of post-release supervision to run concurrently. On that point, Geller notes that we have previously presumed that a trial court has discretion with respect to sentences of incarceration and post-release supervision to "make one form [of punishment] consecutive and the other concurrent." *State v. Galvan*, 305 Neb. 513, 519, 941 N.W.2d 183, 189 (2020), *modified on denial of rehearing* 306 Neb. 498, 945 N.W.2d 888.

The language from the oral pronouncement Geller relies upon, however, is not the only statement the district court made as to whether Geller's terms of post-release supervision would run concurrently or consecutively. As set forth above, before the district court imposed the specific sentencing terms, it said that that the sentence for the weapon conviction was "going to be consecutive." In addition, immediately after the district court set forth the specific terms of imprisonment and post-release supervision, it stated that "Counts 1, 2 and 3 are to be served concurrently" but that "Count 5 is to be served consecutive to Counts 1, 2 and 3." And finally, the district court stated that Geller would be obligated to pay fees associated with post-release supervision for 24 months, which would be consistent with the term of post-release supervision on the weapon conviction running consecutively to the terms of post-release supervision on the other charges and inconsistent with the terms of post-release supervision running concurrently.

Given the language summarized above, we find that the district court's orally pronounced sentence was ambiguous or contradictory as to whether each of Geller's terms of post-release supervision were to run concurrently to each other or the term of post-release supervision for his weapon conviction was to run consecutively to the terms of post-release supervision on the other charges. Accordingly, we must determine whether a sentencing court may clarify an ambiguous or contradictory orally pronounced sentence in a subsequent written sentencing order.

The Nebraska Court of Appeals has held that when the oral pronouncement of a sentence is ambiguous, appellate courts can and should look to a subsequent written sentencing order to clarify the ambiguity. The Court of Appeals first recognized this proposition in *State v. Sorenson*, 2 Neb. App. 998, 520 N.W.2d 28 (1994), *affirmed as modified* 247 Neb. 567, 529 N.W.2d 42 (1995), and has followed it in later unpublished decisions. See, e.g., *State v. Janousek*, Nos. A-17-875, A-17-876, 2018 WL 3752165 (Neb. App. Aug. 7, 2018) (selected for posting to court website); *State v. Wright*, No. A-99-1193, 2001 WL 968475 (Neb. App. Aug. 28, 2001) (not designated for permanent publication).

In its opinion in *Sorenson*, the Court of Appeals cited decisions from many other jurisdictions holding that a written sentencing judgment may be used to resolve ambiguities in an oral pronouncement. See, e.g., *U.S. v. Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) ("[w]hen an orally pronounced sentence is ambiguous, . . . the judgment and commitment order is evidence which may be used to determine the intended sentence"); *Marshall v. State*, 621 N.E.2d 308, 323 (Ind. 1993) (holding that written order "may be used to determine what sentence was intended where the oral sentence is ambiguous"); *State v. Munk*, 453 N.W.2d 124, 125 (S.D. 1990) (holding that "if the oral sentence is ambiguous, the written judgment may be relied upon to clarify the ambiguity").

Not only is the rule the Court of Appeals adopted in *Sorenson* recognized in many other jurisdictions, we also find it sound and consistent with our precedent. This court granted a petition for further review in *Sorenson* and affirmed the judgment of the Court of Appeals as modified. See *State v. Sorenson*, 247 Neb. 567, 529 N.W.2d 42 (1995). Although this court did not adopt the same rationale as the Court of Appeals, it agreed with the Court of Appeals that, under the circumstances, the district court's written journal entry describing the defendant's sentence was controlling over its oral pronouncement. Rather than relying on the oral pronouncement's ambiguity, however, this court found that the written journal entry controlled because, to the extent the district court's oral pronouncement imposed a different sentence, it was not permitted by statute and was consequently "invalid." *Id.* at 573, 529 N.W.2d at 45.

This court thus recognized in *Sorenson* that a written sentencing order will control over an oral pronouncement to the extent the oral pronouncement is invalid. And while this court found the oral pronouncement in *Sorenson* invalid on the grounds that it was not permitted by statute, courts have recognized that sentences are likewise invalid to the extent their terms cannot be determined as a result of contradictory or ambiguous language. See, e.g., *United States v. Alverson*, 666 F.2d 341, 348 (9th Cir. 1982) (holding that correction of ambiguous sentence does not violate double jeopardy because "the initial ambiguous sentence is of no effect"); *United States v. Moss*, 614 F.2d 171 (8th Cir. 1980) (vacating and remanding for resentencing on grounds that sentences imposed were ambiguous). See, also, *United States v. Daugherty*, 269 U.S. 360, 363, 46 S. Ct. 156, 70 L. Ed. 309 (1926) ("[s]entences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them").

Permitting a trial court to clarify an ambiguous or contradictory oral pronouncement via a subsequent written order

is also consistent with the line of cases Geller relies upon in this case. Those cases, which we have discussed above, limit a sentencing court's authority to modify or amend an orally pronounced sentence, but only if the orally pronounced sentence is valid. See, *State v. Lessley*, 301 Neb. 734, 744, 919 N.W.2d 884, 891 (2018) ("[a] sentence *validly imposed* takes effect from the time it is pronounced") (emphasis supplied); *State v. Schnabel*, 260 Neb. 618, 623, 618 N.W.2d 699, 703 (2000) ("[w]hen a *valid sentence* has been put into execution, [a] trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed") (emphasis supplied).

At oral argument, Geller argued that rather than allowing ambiguous orally pronounced sentences to be clarified by a subsequent written order, we should apply a different rule to clarify ambiguity in this case. He argues that any ambiguity as to whether his terms of post-release supervision were to run consecutively or concurrently should be resolved in favor of the terms being served concurrently, because we have held that when sentences are imposed at the same time, "unless the court specifically states otherwise at the time the sentences are pronounced, they run concurrently with each other." *State v. Harms*, 304 Neb. 441, 447, 934 N.W.2d 850, 855 (2019).

But that rule, as we have articulated it, does not apply here. In this case, the district court *did* specifically state that Geller's sentences were to run consecutively. The question as to what sentence the district court imposed arises not because the district court said nothing, but because the oral pronouncement was contradictory. Geller offers no compelling argument as to why the rule should be extended to cover situations where the sentencing court specifically states that sentences should run both consecutively and concurrently.

Our holding in this case that a sentencing court may clarify an ambiguous orally pronounced sentence in a subsequent written sentencing order is limited to those cases in which the ambiguity exists on the face of the words of the oral

pronouncement, or what in some contexts is referred to as a "patent ambiguity." See, e.g., *In re Estate of Mousel*, 271 Neb. 628, 632, 715 N.W.2d 490, 494 (2006). For purposes of this case, we need not and do not consider whether a sentencing court has the same authority if the oral pronouncement contains a "latent ambiguity." See *id.* at 631, 715 N.W.2d at 494.

Because the district court's amended sentencing order clarified the ambiguity in the oral pronouncement, we conclude the district court did not err by issuing the amended sentencing order and Geller's assignment of error lacks merit.

*Excessive Sentences Arguments.*

Having determined that the district court did not err by issuing the amended sentencing order, we now turn to whether the sentences imposed were excessive. Geller argues that the district court should have ordered the sentence on his attempted possession of a deadly weapon by a prohibited person conviction to be served concurrently to the sentences on his possession of a controlled substance convictions and that, overall, the district court should have ordered a more lenient sentence.

[7] It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. This is true even when the crimes arise out of the same incident. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017), *modified on denial of rehearing* 296 Neb. 606, 894 N.W.2d 349. In addition, Geller's sentences were within statutory limits. Accordingly, in order to show that his sentences were excessive, Geller must establish that the district court abused its discretion in sentencing him. See *State v. Dejaynes-Beaman*, 317 Neb. 131, 8 N.W.3d 779 (2024).

[8] But Geller can show no abuse of discretion. As we often say, an abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* Geller has not shown that the district court's sentences clear this high hurdle. We have on numerous

occasions set forth the various factors that a trial court is to consider in fashioning a sentence. See, e.g., *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). Geller points to some of those factors and argues they weighed in favor of concurrent or more lenient sentences in this case. There is nothing in the record, however, that suggests the district court did not consider these factors in selecting the sentences it imposed. Neither is there any indication that the district court considered impermissible factors. Mindful that it is not our function to conduct a de novo review of the record to determine what sentence we would impose, see *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024), we find that the district court did not abuse its discretion in sentencing Geller.

## CONCLUSION

We find no merit to Geller's assignments of error and therefore affirm.

AFFIRMED.