IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. LOFTIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHAREES LOFTIN, APPELLANT.

Filed March 3, 2026.    No. A-25-451.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Elizabeth Gasaway for appellant.

Michael T. Hilgers, Nebraska Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

FREEMAN, Judge.

### INTRODUCTION

Charees Loftin appeals his plea-based conviction for second degree attempted assault and criminal mischief entered by the district court for Lancaster County. He argues that the district court imposed an excessive sentence and that his trial counsel was ineffective. For the reasons explained below, we affirm.

### BACKGROUND

Loftin was originally charged with second degree assault, a Class IIA felony; use of a firearm to commit a felony, a Class IC felony; possession of a stolen firearm, a Class IIA felony; and unlawful discharge of a firearm, a Class ID felony, several of which included a penalty of up to 50 years' imprisonment. Loftin agreed to plead no contest to an amended information charging him with second degree attempted assault, a Class IIIA felony, and criminal mischief of $5,000 or more, a Class IV felony.

- 1 -

At the plea hearing, Loftin and his counsel stated that they understood the terms of the plea agreement. Loftin affirmed that no one had made any threats or had given him any promises to enter a plea agreement. And his counsel believed that Loftin was making the plea "freely, voluntarily, knowingly, and intelligently."

The district court advised Loftin of his various constitutional rights, which he indicated he understood and that he was giving up those rights by entry of a plea. Loftin stated that he did not have any questions regarding his rights and indicated that he discussed his rights with his counsel, and his counsel confirmed.

The State provided a factual basis. As approximately two hundred people were leaving a party in Lincoln, shots were fired at a parked vehicle outside the building. Two people were shot, one in the foot and another in the hand. The vehicle was shot approximately 28 times and approximately 71 spent shell casings were found in the parking lot where the vehicle had been parked.

Loftin is a known gang member and was arrested for crimes associated with the shooting. One of the victims of the shooting was affiliated with a rival gang that had killed Loftin's half-brother. Loftin made several social media posts within the days prior to the shooting, referencing how he was going to kill the opposition. Shortly before the shooting, Loftin sent several text messages indicating he was "in blow mode" and to "do it 4 shooter Tae," his half-brother that was killed.

Loftin's phone indicated that he was at the scene of the shooting. He sent the location of the shooting to others and messaged that he was "outside the function rn [sic] in Lincoln." He also sent messages referring to the vehicle that was shot.

Shortly after the shooting, Loftin posted photos of himself with guns similar to the ones used at the shooting. Loftin was later found with two guns that were traced to the shooting.

Loftin's counsel agreed that Loftin's pleas of no contest were consistent with the State's recitation of the law and facts. The district court informed Loftin of the possible penalties of his charges, which Loftin indicated he understood. He was told that the State would have to prove the charges beyond a reasonable doubt, and he indicated that he understood. He affirmed that his counsel had explained to him what the State would have to prove to convict him of the charges. Loftin confirmed that he told his counsel everything he knew about the case, was unaware of anything else that could help him, and had enough time to talk with his counsel. He stated that he was satisfied with his counsel's job.

The district court found that Loftin understood his charges and the consequences. The district court found that Loftin made his plea "freely, voluntarily, knowingly, and intelligently" and accepted the plea. After the plea, the district court ordered a presentence investigation, which is discussed in more detail below.

At sentencing, the district court noted that it "reviewed the presentence investigation report." It stated:

> The incident which occurred was extremely dangerous, and it does appear that you were involved, if not the actual shooter.
>
> I would add to [the State's] rendition of the facts that you posted a photo of yourself with an AR style rifle and a handgun, which were linked to the casings found at the scene

of the shooting. . . . So I do believe that a maximum sentence is appropriate. You did get a good plea deal on this case.

Having regard for the nature and circumstances of the crimes and the history, character and condition of [Loftin], the Court finds that there are substantial and compelling reasons not to place [Loftin] on probation. The risk is substantial that if placed on probation [Loftin] would engage in additional criminal conduct. [Loftin's] crime did involve a substantial amount of violence. And a lesser sentence would depreciate the seriousness of [Loftin's] crime and promote disrespect for the law.

The district court sentenced Loftin to a term of 36 months' imprisonment and 18 months' post-release supervision for second degree attempted assault and 24 months' imprisonment for criminal mischief of $5,000 or more. The sentences were ordered to run consecutively to each other and any other sentence.

Loftin appeals.

## ASSIGNMENTS OF ERROR

Loftin assigns that (1) the district court imposed an excessive sentence and (2) his counsel was ineffective for failing to advise him of the nature of the charges, the evidence against him, and the consequences of the plea offer.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Geller*, 318 Neb. 441, 16 N.W.3d 365 (2025).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. See *id.*

## ANALYSIS

*Excessive Sentence.*

Loftin argues that the district court failed to consider mitigating factors in its sentence.

A Class IIIA felony is punishable by a maximum of 3 years' imprisonment and 18 months' post-release supervision or $10,000 fine, or both. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2024). A Class IV felony is punishable by a maximum of 2 years' imprisonment and 12 months' post-release supervision or $10,000 fine, or both. See § 28-105(1). Loftin was sentenced to the maximum imprisonment allowed for both of his charges and was sentenced to 18 months' post-release supervision for his Class IIIA felony conviction. The sentences imposed are within the statutory limits; we therefore review the sentences only for an abuse of discretion.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Sutton, supra*. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Loftin first argues that the district court failed to mention several mitigating factors during the pronouncement of its sentencing order. But as the Nebraska Supreme Court has stated, "We reject the notion that a court does not adequately consider sentencing factors when it does not discuss each one of them during the sentencing hearing or in its sentencing order." *State v. Blaha*, 303 Neb. 415, 421, 929 N.W.2d 494, 501 (2019). The record includes the presentence investigation report and shows that the court reviewed the entire report, which contains the information necessary to weigh the sentencing factors. *State v. Blaha*, *supra*. Loftin appears to quarrel with the weight accorded to the factors by the district court. See *id.* However, we do not review sentences de novo, but only for an abuse of discretion. See *id.*

Regarding the specific factors, Loftin claimed that the district court did not consider his young age, traumatic history, limited criminal history, acceptance of responsibility, and amenability to community-based supervision. But the presentence investigation report, ordered by the district court, detailed information regarding these factors.

The district court stated that it regarded "the nature and circumstances of the crimes and the history, character and condition" of Loftin. Loftin was 18 years old at the time of the shooting. The presentence investigation report included substantial information regarding Loftin's traumatic history. He reported that he grew up in a physically abusive home and was introduced to marijuana at age 11. At 13 years old, he began smoking marijuana daily with his father. At the time of the shooting, he claimed he was under the influence of marijuana and opiates. Loftin has a limited criminal history involving theft and a federal conviction of unlawful transport of firearms.

Based on the record, we question Loftin's acceptance of responsibility. The district court noted that Loftin posted photos of himself with guns shortly after the shooting. Even though Loftin stated, "I take full responsibility for the role I played in this crime," he maintained throughout the proceedings that he was not one of the shooters. In his presentence investigation interview, he stated, "I know I didn't do no wrong." And while it may be proper for a trial court to grant sentence concessions to defendants who plead guilty when the interest of the public in the effective administration of criminal justice would be served, these factors are not found here. See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *disapproved on other grounds, State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025).

Finally, it is unlikely that Loftin is amenable to community-based supervision. On the overall LS/CMI assessment, Loftin scored in the high risk range to reoffend. He scored in the very high risk range in the domains of education/employment, companions, and antisocial pattern; in

the high risk range in the domain of leisure/recreation and procriminal attitude; in the medium risk range in the domain of criminal history; and in the low risk range in the domains of family/marital and alcohol/drug problems.

The district court found that "[t]he risk is substantial that if placed on probation [Loftin] would engage in additional criminal conduct." At sentencing, Loftin stated that his previous incarceration for a separate matter, was a "big wake up call" for him. And while incarcerated, he was well-behaved with only one write-up for being late for lockdown. However, he also described his time incarcerated as "criminal networking."

Lastly, the district court referenced the "good plea deal" that Loftin received. In deciding the appropriate sentence, a sentencing court can account for the fact that the defendant received a substantial benefit from a plea bargain agreement. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025). As a result of his plea deal, the number of Loftin's charges was reduced from four to two, which also removed several charges with a maximum sentence of 50 years' imprisonment.

Therefore, the district court did not abuse its discretion in sentencing within the statutory limits because it relied on the relevant factors.

*Ineffective Assistance of Counsel.*

Loftin assigns that "trial counsel was deficient in failing to properly advise [him] of the nature of the charges he was facing, the evidence against him, or the consequences of the plea offer."

First, pursuant to *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025), this assignment of error is sufficiently pled because it specifically states what counsel failed to properly advise. Next, we set out the legal framework for evaluating a claim of ineffective assistance of counsel.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.*

When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id.* When a claim of ineffective assistance of counsel is raised in a direct

appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

We note that Loftin argues that his counsel pressured him into taking the plea deal. But this error was not specifically assigned. See *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court). Even if we reviewed his argument, it is refuted by the record. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013) (allegations of ineffective assistance which are affirmatively refuted by defendant's assurances to sentencing court do not constitute basis for postconviction relief).

Loftin's assigned error claims that his counsel failed to properly advise him of three separate topics: the nature of the charges, the evidence against him, and the consequences of the plea offer. We address each as a separate claim. Loftin argues that the record is insufficient to address these claims, but we find that two of Loftin's claims are refuted by the record.

First, Loftin argues that his counsel failed to advise him of the nature of the charges. At the plea hearing, Loftin was informed of his charges, the possible penalties of his charges, and the evidence in support of his charges. Therefore, this claim is refuted by the record.

Second, Loftin argues that he was not advised of the consequences of his plea offer. In *State v. Haas*, 317 Neb. 919, 934, 12 N.W.3d 787, 801 (2024), the defendant claimed that his counsel was ineffective for failing to advise him of the "consequences of his plea of no contest." At the plea hearing, the district court explained the charges, the maximum penalty of the charges, and the waiver of the defendant's rights. See *State v. Haas, supra*. The Supreme Court previously opined that because of the district court's colloquy, the defendant was aware of the consequences of pleading no contest, and, therefore, the defendant's claim of ineffective assistance of counsel was refuted by the record. See *id.*

Similarly, here, Loftin pled no contest. As discussed above, Loftin was informed of his charges and the possible penalties. He was informed of his rights and the consequences of waiving his rights by pleading no contest. As in *State v. Haas, supra*, Loftin was made aware of the consequences of pleading no contest. Therefore, this claim is refuted by the record.

We find that the record is insufficient to address Loftin's last claim that he was not advised of the evidence against him. We acknowledge that Loftin heard the State's factual basis. Loftin further told the district court that he told his counsel everything he knew about his case, was unaware of anything else that could help him, and he was satisfied with the job his counsel had done. Nevertheless, the record on appeal does not describe trial counsel's advice or lack of advice to Loftin regarding the evidence against him, nor does the record contain the evidence itself. Therefore, the record is insufficient to review this claim, and it is preserved for postconviction review. See *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024) (finding record was insufficient to address claim that trial counsel failed to advise accurately or completely regarding evidence against defendant).

CONCLUSION

We conclude that the district court did not abuse its discretion in imposing a sentence within the statutory limits that was supported by the relevant factors. Two of Loftin's claims for

ineffective assistance of counsel are refuted by the record. The record is insufficient to address Loftin's claim that his counsel was ineffective for failing to advise him of the evidence against him and is preserved for postconviction review.

AFFIRMED.